(76 South. 208)

No. 22601.

STATE v. WEINSTEIN.

(June 11, 1917. Rehearing Denied June 30, 1917.)

*(Syllabus by the Court.)*

CONSTITUTIONAL LAW &ifrac;208(6) — RAILROADS &ifrac;255(1) — CLASS LEGISLATION — WHAT CONSTITUTES.

Act No. 250 of 1916, p. 523, providing that one who purchases or receives for sale, or in pledge, or on storage, or for safe-keeping, any article of iron, brass, or other metal, belonging to a railroad company, and which was manufactured exclusively for railroad purposes, without the written consent of the officers of the railroad company same to be a misdemeanor, is not class legislation. It is an exercise of the police power of the state, passed in the general interest of the public, and for its safety, as well as to discourage the pilfering of such articles from a public corporation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 651, 653, 667; Railroads, Cent. Dig. §§ 773, 774, 777, 781.]

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Prentiss B. Carter, Judge.

H. Weinstein was indicted under Act No. 250 of 1916, making it a misdemeanor to receive for sale or in pledge or on storage any article of iron, brass, or other metal manufactured and used exclusively for railroad purposes without the consent in writing of officers of the company, and, the indictment being quashed, the State appeals. Judgment annulled and reversed, and cause remanded.

A. V. Coco, Atty. Gen., and J. Vol Brock, Dist. Atty., of Franklinton (Vernon A. Coco, of Marksville, of counsel), for the State. C. Ellis Ott, of Bogalusa, for appellee.

SOMMERVILLE, J. The state appeals from a judgment in this case ordering that the indictment, drawn under Act No. 250 of 1916, p. 523, be quashed, on motion of defendant to that effect; on the ground that the act is class legislation, and deprives him of property without due process of law, and therefore is in violation of the Constitutions of the United States and of this state. The act is in the following language:

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that any person who shall without written authority from the railroad company owning the same, purchase or receive for sale, or in pledge, or on storage, or for safe-keeping from any other person any link, pin, bearing, journal or other article of iron, brass or other metal which has been manufactured and is used exclusively for railroad purposes, without the consent in writing of the president, vice president, general· manager, superintendent or purchasing agent of such railroad company, shall be held guilty of a misdemeanor, and upon conviction be fined in a sum not less than ·one hundred dollars nor more than five hundred dollars, or be imprisoned not less than six months or more than one year, or both at the discretion of the court, and proof of possession of any of said articles shall be prima facie evidence of violation of this act."

Section 812, Rev. St., provides for the punishment of larceny; and Act 249 of 1916, p. 522, provides for the punishment of the larceny of journal brasses, fixtures, or attachments from locomotives, tenders, freight or passenger cars by imprisonment for not less than one year or more than two years, with the proviso:

"That if the stealing or removal of such journal bearings or brasses, or any parts or attachments of any locomotive, tender or car, or any fixture or attachment belonging to, connected with, or used on any locomotive, tender or car as aforesaid shall be the cause of wrecking any train, locomotive or other car in this state whereby the life of any person or persons shall be lost as a result of the felonious or malicious stealing, nothing in this act shall be construed as preventing prosecution for such crime."

Section 832, R. S., provides for punishment for receiving stolen goods by imprisonment not exceeding one year; and the receiver of said stolen goods must restore the goods so received, or pay double the value thereof, or suffer further imprisonment and hard labor for a period not exceeding one year. Act 250 of 1916, p. 523, makes the receiving or purchasing of any. link, pin, bearing, journal, or other article of iron, brass, or other metal, which has been manufactured and is used exclusively for railroad purposes, without the consent of the railroad company owning such article, for the purpose of sale, or pledge, or on storage, or for safe-keeping, a crime; and that upon conviction the purchaser or receiver shall be fined in a sum not less than $100 or more than $500, or be imprisoned not less than six months or more than one year, or both, at the discretion of the court; and the act further provides that the proof of possession of any such article shall be prima facie evidence of the violation of the act.

The Legislature has at various times adopted definite and separate provisions for the stealing of horses, cattle, automobiles, diverting electricity and gas, etc.; and these several acts have not been attacked as class legislation. And we are of the opinion that the act which makes the purchasing or receiving for sale, or in pledge, or on storage, or for safe-keeping from any other person than "the railroad company owning the same," certain named articles which have been manufactured and are used exclusively for railroad purposes, without the written consent of the officers of the railroad company, a misdemeanor, and in the providing that "the proof of possession of any of said articles shall be prima facie evidence of violation of this act," is not class legislation.

The Congress of the United States have legislated in the same way, and have made separate provisions for the punishment of stealing from the public property of the government, and stealing from ships and other vessels, and the stealing of freight which is in interstate commerce. The states of New York and Illinois have passed similar statutes with reference to railroad companies, very like the statute under consideration in this case.

It will be presumed that the Legislature had knowledge of the railroad business, or rather how it is conducted, and the every day practical operation of railroads, and that brass journals, etc., are the objects of frequent thefts. Railroad cars cannot be operated without these appliances, and there is no practical method of preventing their exposure to theft. Railroad brasses are easily stolen from trains, and the parts from which the brasses are extracted are quickly heated and break; and derailments, with consequent injuries to person and loss of property, must be the inevitable result. In such case, where the business is affected with a public use, or certain articles are used as accessories in carrying on such business, the disposition of that property may always be limited or regulated where public interests will require it to be; and the Legislature had the right to prevent the pilfering of the property under consideration on account of the exposed position of the same, and in some respects to regulate the sale and use thereof. By such legislation the state aids in securing safety to the traveling public, and security to the patrons of railroads in their business with the railroads as common carriers.

The object and spirit of the law is to so restrict the use to which certain private property of railroads may be put as to prevent pilfering, and the receiving of stolen goods belonging to railroads, and to promote the safety of the traveling public at the same time. When it is borne in mind that the safety of thousands of individuals and the care of much freight are daily intrusted to railroad companies of the state, it must be conceded that it is not only the right, but the duty, of the state, in the exercise of its police power, to use every precaution for the safety of the traveling public and property engaged in commerce, the preservation of property of railroad companies, and for the discouragement of the larceny of and crime of receiving stolen property, of the kind in question, and it was within the police power of the state to pass such a statute.

Under the act, and under the indictment charging defendant with having violated same, the state must prove that the articles mentioned in the indictment were owned by the New Orleans & Great Northern Railroad Company; and that defendant purchased or received same from persons unknown to the grand jury, and that these articles had been manufactured for and were exclusively used for railroad purposes, without the consent in writing of the railroad company owning same, or any of the officers thereof.

The act further makes the possession of said articles prima facie evidence of a violation of the act. Such possession is not conclusive evidence, and the defendant has the right to rebut it with competent proof.

Reference has been made to a decision of the Ohio Supreme Court, entitled State of Ohio v. Schmuck, 77 Ohio St. 438, 83 N. E. 797, 14 L. R. A. (N. S.) 1128, 122 Am. St. Rep. 527, which act referred to bottles and vessels, and their contents, mostly various kinds of beverages and food, and which gave

to the owner the right to invoke the power of the state, through the criminal court, to save the owners from the loss of bottles and vessels belonging to them. This was declared to be class legislation by a court of that state in giving to such dealers an extraordinary right over other dealers in reclaiming their property by punishing the offenders who had possession of said property. The act referred to contains more drastic provisions than the one under consideration. It provides for search warrants and seizure of property in such circumstances, and in many respects the provisions of the act are rigid and severe. On conviction, the property taken on the search warrant was to be restored to the rightful owner.

It was held by the Ohio court:

"That the general public has not been offended by the commission of the acts alleged in the indictment, nor does the statute in question make criminal any act in which the general public is concerned."

And further that:

"The possession of such articles by any one, or the using or buying and selling the same without the written consent of the owner or owners, shall be prima facie evidence of the unlawful use and receiving prohibited by the act. * * * Its sole purpose seems to be the protection of the owners of certain described articles of personal property, who are engaged in a limited line of business, and the act might well be entitled 'An act to protect persons engaged in the selling of any merchandise, food, or beverages in bottles or others vessels from the loss of their bottles or other vessels.' This purpose pervades every line of the statute, including the provision for search and seizure, and it is given criminal caste in order to secure to such owners a better protection than is or perhaps can be afforded to owners of any other class of property. As to the recovery of other kinds of property by the lawful owner, he must rely on proceedings in a civil action; but here the state of Ohio is to become the plaintiff, and in a drastic criminal proceeding, not only 'get at' the property for the owner and restore it, but to punish by fine or imprisonment, or both, the person who has trespassed upon the title or possession of the owner."

The Ohio statute is different in many ways from that under consideration; and the reasons and the objections stated above have no

application to the statute of this state, making it a misdemeanor to purchase or receive certain property belonging to a railroad company. The act is a valid process of law against offenders of its provisions.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that this suit be remanded to be proceeded with in accordance with law.

O'NIELL, J., takes no part.